# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re:**

**KEVIN C. WERRY and**
**D'RESE G. WERRY,**

**Debtors.**

**Bankruptcy Case**
**No. 11-01710-JDP**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Randal J. French, BAUER & FRENCH, Boise, Idaho, Attorney for Debtors.

Mary P. Kimmel, OFFICE OF THE US. TRUSTEE, Boise, Idaho, Attorney for Office of the US. Trustee.

## Introduction

Chapter 11[1] debtors-in-possession Kevin and D'Rese Werry

_____

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 1

("Debtors")[2] filed for bankruptcy relief on June 6, 2011. Dkt. No. 1. Two

days later, they submitted an application to employ Randal J. French

("Counsel") as their attorney ("Application"). Dkt. No. 14. Per the

Application, and their Chapter 11 Fee Agreement with Counsel ("Fee

Agreement"), Debtors sought approval from the Court to pay Counsel

$7,500 in fees for providing them both pre- and post-petition legal services.

*Id*. According to the Fee Agreement, Counsel intended to deem that $7,500

earned upon receipt, to deposit the funds in his general account, and to

apply it to his fees without first seeking the Court's approval that the

amount of fees being paid was reasonable. Dkt. No. 15.

The Office of the United States Trustee ("UST") filed an Objection to

the Application. Dkt. No. 25. A hearing concerning the Application and

Objection was held July 19, 2011, at the conclusion of which the Court took

the issues under advisement. After considering the record, the parties'

---

[2] Debtors are debtors-in-possession in this chapter 11 case. As such, they are acting in the capacity, and with all of the rights, powers, and fiduciary duties, of a trustee. § 1107. For ease of readability, however, they will be referred to simply as Debtors.

MEMORANDUM OF DECISION - 2

submissions, and applicable law, this Memorandum sets forth the Court's

findings of fact and conclusions of law.  Rule 7052, 9014.

**Facts**

**I.      Payments to Counsel.**

Debtors filed their chapter 11 petition on June 6, 2011, and the

Application to employ Counsel on June 8.  Dkt. Nos. 1, 14.  Debtors also

filed their Schedules, Dkt. No. 23, and Counsel filed a Rule 2016(b)

Disclosure of Compensation, Dkt. No. 7, and a Rule 2014(a) verified

statement of Counsel ("Counsel's Verified Statement"), Dkt. No. 15,

together with a copy of the Fee Agreement.  From those documents, it

appears Counsel has already been paid a total of $8,539, with payment

occurring prior to the commencement of Debtors' bankruptcy case.  Of that

amount, $1,039 was used to pay the chapter 11 filing fee, and $7,500 is to be

applied to Counsel's pre- and post-petition fees.

As near as the Court can tell, Debtors' friend, Carol Duppong

("Duppong"), provided the funds to pay Counsel.  Debtors' Schedules list

Duppong as an unsecured, nonpriority creditor holding an $8,539 claim

MEMORANDUM OF DECISION - 3

stemming from a May 2011 loan.  Schedule F, Dkt. No. 23.  From this

information, the Court presumes Debtors borrowed the money from their

friend to pay their lawyer.

Due to inconsistencies among the various documents, however, it is

unclear how the $7,500 for fees actually came into Counsel's possession.

Counsel's Verified Statement indicates Duppong "paid $7,500 by check

drawn on her account on or about May 12, 2011."  Dkt. No. 15 at 3.

However, the Fee Agreement recites that the $7,500 was paid by Debtors,

and, if any of that amount was unused at the end of representation, the

balance would be refunded to Debtors.  *Id.*

Counsel's Verified Statement outlines his assumptions regarding his

right to access the $7,500 he has been paid.  It provides in part:

> 8.  I have received $7,500 as an advance
> payment to file the Debtor-in-Possession's chapter
> 11, plus $1,039 as a filing fee.  From that retainer, I
> have applied and paid to my general account,
> $7,500, in part to pay for services rendered pre-
> petition and the remainder as an advance
> payment retainer.  I have accounted to the Werrys
> for all services rendered pre-petition, and will
> account to the Court for all services rendered

MEMORANDUM OF DECISION - 4

> post-petition, and refund any unearned retainer
> or seek additional compensation if the fees for
> services rendered exceeds the amount of the
> advance payment retainer.

Dkt. No. 15.  At the hearing, Counsel clarified that while he would

"account" to the Court for his use of the "advance payment retainer," he

would not seek the Court's advance approval for his use of those funds as

payment for his post-petition services.  Counsel asserts that, if the Court

desires to review the reasonableness of his fees, it can do so after those

services have been rendered by initiating an inquiry under § 329(b).[3]

The UST objects to the terms of Counsel's employment.  It views the

---

[3] Section 329(b) provides:
> If [compensation paid within one year before the
> filing of a bankruptcy petition for services to be
> rendered in connection with the bankruptcy case]
> exceeds the reasonable value of any such services, the
> court may cancel any such agreement or order the
> return of any such payment, to the extent excessive,
> to—
> > (1)  the estate, if the property transferred—
> > > (A)  would have been property of the
> > > estate; or
> > > (B)  was to be paid by or on behalf of the
> > > debtor under a plan under chapter 11,
> > > 12, or 13 of this title; or
> > (2)  the entity that made such payment.

MEMORANDUM OF DECISION - 5

provisions of the Fee Agreement allowing Counsel unfettered access to the

funds paid to him pre-petition as an attempt to evade the Code's estate-

professional compensation approval procedures.  Counsel responds that,

in his view, the terms of the Fee Agreement have nothing to do with his

eligibility for employment as Debtors' attorney under § 327(a).  Even if it

did, Counsel asserts the advance payment he has deposited in his general

account is an acceptable compensation arrangement.

## II.   Counsel's disclosures.

Counsel was required to make certain disclosures pursuant to Rule

2014(a), including a statement indicating his connections with the Debtors,

their creditors, and any other party in interest.  Counsel's Verified

Statement asserts:

> [M]y office has no connection with the above-
> named Debtor-in-Possession, its creditors, or any
> other party in interest herein, or their respective
> attorneys.

Dkt. No. 15.  While his Verified Statement discloses that Duppong

provided the funds for his "advance payment retainer," it does not indicate

MEMORANDUM OF DECISION - 6

Duppong was one of Debtors' creditors. *See id.* Moreover, this disclosure

is potentially inconsistent with Counsel's Rule 2016(b) disclosure, which

indicates he received the advance payment from Duppong. *See* Dkt. No. 7.

## Discussion

When they filed their petition, Debtors became debtors-in-

possession, acting in the capacity of a trustee. *See* § 1107. As such,

Debtors' employment of any professional must be approved per § 327(a),

which provides:

> Except as otherwise provided in this section, the
> trustee, with the court's approval, may employ
> one or more attorneys . . . that do not hold or
> represent an interest adverse to the estate, and
> that are disinterested persons, to represent or
> assist the trustee in carrying out the trustee's
> duties under this title.

As can be seen, under this Code provision, two conditions must be

satisfied before a professional person may be employed by a chapter 11

debtor-in-possession: the professional (1) must not hold an interest

adverse to the estate and (2) must be a disinterested person. § 327(a). In

addition, § 327(a) requires bankruptcy court approval of the professional

MEMORANDUM OF DECISION - 7

person's employment.  *See Pryor v. Ready & Pontisakos* (*In re Vouzianas*), 259 F.3d 103, 107–08 (2d Cir. 2001); *Bank Brussels Lambert v. Coan* (*In re AroChem Corp.*), 176 F.3d 610, 621 (2d Cir. 1999); *Harold & Williams Dev. Co. v. United States Trustee* (*In re Harold & Williams Dev. Co.*), 977 F.2d 906, 910 (4th Cir. 1992); *In re Albrecht*, 245 B.R. 666, 671 (10th Cir. BAP 2000).

Among the Court's considerations in determining whether to approve such employment is its anticipated impact on the case's efficient, expeditious, and economical resolution.  *See In re Albrecht*, 245 B.R. at 671 (citing *In re Harold & Williams Dev. Co.*, 977 F.2d at 910).  That analysis necessarily implicates an examination of the reasonableness of the professional's fees.  *In re Kurtzman*, 220 B.R. 538, 542 (S.D.N.Y. 1998).  It is, therefore, appropriate for the Court to consider Counsel's fee arrangement in determining whether to approve his employment in Debtors' case.

## I.      Counsel did not adequately disclose his "connections."

To help the Court in determining whether a proposed professional person meets the requirements of § 327(a), Rule 2014(a) mandates that a verified statement of the proposed professional be submitted, setting forth

MEMORANDUM OF DECISION - 8

the person's "connections" with the debtor, creditors, and any other party

in interest.  *Id.*  The proposed professional has a duty to fully disclose all

such connections, even if they seem irrelevant or trivial.  *See Neben &*

*Starrett, Inc. v. Chartwell Fin. Corp.* (*In re Park-Helena Corp.*), 63 F.3d 877,

881–82 (9th Cir. 1995); *Mehdipour v. Marcus & Millichap* (*In re Mehdipour*),

202 B.R. 474, 480 (9th Cir. BAP 1996).  In addition, the disclosure should be

full, candid, and complete, and the Court should not have to mine a

debtors' schedules or other filings to ferret out potential disinterestedness

issues.  *See In re Hathaway Ranch P'ship*, 116 B.R. 208, 219 (Bankr. C.D. Cal.

1990) ("The disclosure must be made in the application for order

approving employment.  'It is not sufficient that the information might be

mined from petitions, schedules, § 341 meeting testimony, or other

sources.'" (citations omitted)).  Even a negligent or inadvertent omission

from the required disclosures is sufficient reason to deny a professional's

employment.  *See In re Park-Helena Corp.*, 63 F.3d at 881–82.

Here, Counsel did not disclose in his verified statement that the

source of the money used to pay his fee, Duppong, was also one of

MEMORANDUM OF DECISION - 9

Debtors' creditors.  *See* Dkt. No. 15.  Indeed, while Counsel's Verified

Statement indicates, among other things, his receipt of $8,536 from

Duppong, Counsel asserted he has "no connection" with Debtors'

creditors.  *Id.*  This is odd since Debtors' schedules, also apparently drafted

by Counsel, clearly indicate Duppong is a nonpriority unsecured creditor.

*See* Dkt. No. 23.  As a result, it appears that Counsel has a connection with

Duppong of some sort, in that she may have paid his fees.  As noted above,

Counsel's omission from his Verified Statement that Duppong is one of

Debtor's creditors, even if inadvertent, is sufficient to deny Debtors'

Application.

## II.    If Counsel received funds directly from Duppong, he may not be a disinterested person for the purposes of § 327(a).

In addition, if Counsel received the $8,539 payment directly from

Duppong, he likely does not meet the § 327(a) requirement that he be a

disinterested person in Debtors' case.  The term "disinterested person," for

the purposes of § 327(a), is defined in § 101(14), and includes persons that

do "not have an interest materially adverse to the interest of the estate or of

MEMORANDUM OF DECISION - 10

any class of creditors or equity security holders, by reason of any direct or

indirect relationship to, connection with, or interest in, the debtor, or for

any other reason." § 101(14)(C). This requirement is intended to ensure

the attorney is able to make unbiased decisions, free from personal interest.

*In re Kings River Resorts, Inc.*, 342 B.R. 76, 87 (Bankr. E.D. Cal. 2006)

(quoting *First Interstate Bank of Nevada, N.A. v. CIC Inv. Corp.* (*In re CIC Inv.

Corp.*), 192 B.R. 549, 553–54 (9th Cir. BAP 1996)).[4]

Counsel has an economic interest in the funds he intends to use for

his fees. If Counsel's employment were approved he would represent

Debtors, who, in turn, owe a duty to act in the best interest of all creditors.

*See* §§ 704, 1107; *United States v. Aldrich* (*In re Rigden*), 795 F.2d 727, 730 (9th

Cir. 1986). A direct payment to Counsel from one of those creditors, raises

a question as to his ability to provide Debtors with unbiased

representation, free of personal considerations. Because it appears that

---

[4] Counsel recognizes as much in his Response to UST's Objection: "The
goal is to avoid having an attorney represent a debtor-in-possession if the
attorney may have any conflict of interest." Response to UST's Objection at 2,
Dkt. No. 31.

MEMORANDUM OF DECISION - 11

Counsel may have received a direct payment from Duppong, without

knowing more about Counsel's and Debtors' financial relationship with

Duppong,  Counsel may not be disinterested in Debtors' case, and may not

qualify for employment as their attorney.

**III.   Assuming Counsel received the prepetition payment from
Debtors, the terms of the Fee Agreement are inappropriate.**

If, instead of paying Counsel directly, Duppong loaned the $7,500 to

Debtors, who then used the borrowed funds to pay their attorney, Counsel

would likely not suffer from the potential disinterestedness problem

discussed above.[5]  Even so, however, the terms of Counsel's Fee

Agreement raises other concerns.

A.   <u>As attorney for chapter 11 debtors-in-possession, Counsel's
compensation is subject to review under § 330(a).</u>

Consideration of a professional person's compensation arrangement

is appropriate in determining whether to approve his employment.  *In re*

*Kurtzman*, 220 B.R. at 542.  Specifically, in the Ninth Circuit, a

---

[5] This does not rectify, however, the Court's concerns with the
deficiencies in Counsel's disclosures.

MEMORANDUM OF DECISION - 12

professional's compensation terms are analyzed under one of two Code provisions, § 328 or § 330. *Friedman Enters. v. B.U.M. Int'l, Inc.* (*In re B.U.M. Int'l, Inc.*), 229 F.3d 824, 829 (9th Cir. 2000) (explaining that compensation analyses under §§ 328 and 330 are mutually exclusive).

Section 328(a) of the Code allows a bankruptcy court to "pre-approve" reasonable terms and conditions of employment and compensation of a professional when it approves his employment. Thereafter, the court may adjust or modify the terms of the professional's compensation, but only if the pre-approved arrangement turns out to have been "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." § 328(a); *Pitrat v. Reimers* (*In re Reimers*), 972 F.2d 1127, 1128 (9th Cir. 1992); *In re Ida-Man, Inc.*, 91 I.B.C.R. 199, 201 (Bankr. D. Idaho 1991); *In re Cal Farm Supply Co.*, 110 B.R. 461, 465 (Bankr. E.D. Cal. 1989). However, even if a professional's terms of compensation are pre-approved as reasonable per § 328(a), he must submit a fee application before any particular payment is authorized by the Court. Rule 2016(a); *In re Reimers*, 972 F.2d at 1128. The

MEMORANDUM OF DECISION - 13

assurance provided by approval under § 328(a) is that, upon application, the Court will authorize the professional's payment consistent with the pre-approved terms, absent unanticipated changes.  *See id.*

Section 330(a), in contrast, employs a retrospective review of services provided by a professional before the Court approves payment of reasonable compensation for those services that were actual and necessary. The professional must submit an application to the Court, identifying and explaining the services rendered, and seeking approval of a requested amount for compensation and expenses.  *See* Rule 2016(a).  After notice to parties in interest, and a hearing, the Court reviews "the nature, the extent and the value of such services, taking into account all relevant factors" to determine the professional's compensation award.  §§ 330(a)(1), (3).

The Ninth Circuit has established a bright-line test to determine which approach the Court should use in analyzing a professional person's employment and compensation.  *See The Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc.* (*In re The Circle K Corp.*), 279 F.3d 669, 674 (9th Cir. 2001).  Unless the debtor-in-possession's or trustee's application for the

MEMORANDUM OF DECISION - 14

professional person's employment explicitly and unambiguously invokes § 328 pre-approval of a fee arrangement, the professional's fees are to be reviewed under § 330. *Id.*

In this case, Debtors' Application did not explicitly and unambiguously ask the Court to pre-approve Counsel's fee arrangement under § 328. Therefore, any compensation or expenses to be paid to Counsel must be approved by the Court through the fee application procedure identified in § 330 and Rule 2016(a). Counsel's Fee Agreement, however, contemplates that he will not be required to obtain prior approval of payment of his fees for his post-petition services (at least, up to $7,500), and is contrary to the requirements of the Code and Rules. Because Counsel proposes a fee arrangement that does not comport with the Code and Rules, the Court concludes his employment will not contribute to the efficient, expeditious, and economical resolution of Debtors' case, and Debtors' Application must be denied.

      B.     <u>The funds paid to Counsel pre-bankruptcy are property of Debtors' bankruptcy estate.</u>

MEMORANDUM OF DECISION - 15

Of course, Counsel asserts § 330 does not apply in this case, basing his argument on his belief that, due to the particular type of fee "retainer" he claims to have received from Debtors, the $7,500 was earned on receipt. According to Counsel, under this arrangement, Debtors had no interest in the funds paid to Counsel when they filed their bankruptcy petition, the funds were not property of the bankruptcy estate, and the Court has no authority to require the retrospective approval of Counsel's compensation payments from those funds under § 330(a).[6]  *See* §§ 330(a), 541(a)(1).  On the other hand, if Debtors retained any interest in the funds paid to Counsel, the $7,500, or some portion of it,[7] became property of the estate when Debtors filed, and advance approval for the payment of Counsel's fees under § 330(a) is mandated.  §§ 330(a), 541(a)(1).

_____

[6]  Even if Counsel's characterization of the Fee Agreement is correct, Debtors, as debtors-in-possession, would still need to have requested approval of the retainer arrangement under § 328.  Because Debtors did not request § 328(a) pre-approval of Counsel's compensation, his employment must be denied.

[7]  The portion of the $7,500 received and applied to fees before bankruptcy for Counsel's pre-petition services would not be property of the estate.  *See* § 541(a)(1).

MEMORANDUM OF DECISION - 16

1.    <u>"Advance payment retainers" are not property of the
bankruptcy estate</u>.

Over time, two methods of analyzing fee arrangements, and of

determining whether retainers are property of a bankruptcy estate, have

developed.  Under one approach, bankruptcy courts have simply

determined that, in the bankruptcy context, any pre-petition retainer paid

to an attorney is a security retainer, no matter how it is described by the

attorney and client, and is therefore property of the estate.  *In re Prod.*

*Assocs., Ltd.*, 264 B.R. 180, 187–88 (Bankr. N.D. Ill. 2001) (recognizing, but

disagreeing with, what it termed to be the majority method of fee

arrangement analysis).  *See also Weinman, Cohen & Niebrugge, P.C. v. Peters*

(*In re Printcrafters, Inc.*), 233 B.R. 113, 118 (Bankr. D. Colo. 1999); *In re*

*Printing Dimensions, Inc.*, 153 B.R. 715, 719 (Bankr. D. Md. 1993); *In re NBI,*

*Inc.*, 129 B.R. 212, 222–23 (Bankr. D. Colo. 1991); *In re Hathaway Ranch*

*P'ship*, 116 B.R. 208, 217 (Bankr. C.D. Cal. 1990).  Under this analytical

method, any attempt by the parties to agree that a retainer was earned on

receipt by the attorney is viewed as inherently unreasonable in connection

MEMORANDUM OF DECISION - 17

with a bankruptcy case because it "effectively nullif[ies] the protections

afforded the estate and its creditors by the Code and Rules," and "allow[s

the] debtor and counsel to impermissibly usurp the Court's authority

under the Code and Rules." *In re NBI, Inc.*, 129 B.R. at 222–23.

Under the other method of reviewing retainers, funds given to an

attorney are viewed as property of the bankruptcy estate, regardless of the

type of retainer used, but only so long as the debtor would have had an

interest in the retainer under state law. *See, e.g., In re McDonald Bros.*

*Constr., Inc.*, 114 B.R. 989, 997 (Bankr. N.D. Ill. 1990). State law determines

the nature of a debtor's interest in property, including prepetition

retainers. *Id.* at 996 (quoting *Butner v. United States*, 440 U.S. 48, 54 & n.9

(1979)). Federal law then dictates whether that interest in property is

property of the estate. *First Fed. Bank of Cal. v. Cogar (In re Cogar)*, 210 B.R.

803, 809 (9th Cir. BAP 1997); *see, e.g.,* § 541(a).

This Court has taken both approaches in the past. *Compare In re Ida-*

*Man, Inc.*, 91 I.B.C.R. at 199–200 ("Simply stated, 'advance payments,'

'earned upon receipt' retainers, 'minimum fees,' or similar creative fee

MEMORANDUM OF DECISION - 18

arrangements concocted by counsel are inappropriate in a bankruptcy setting."), *with In re For-Rose Plumbing, Inc.*, 99.2 I.B.C.R. 69, 72 (Bankr. D. Idaho 1999) ("Whether a debtor's interest in property is property of the estate is a question of federal law.  However the extent of the debtor's property interests is controlled by state law." (citations omitted)).  Because there is some question whether state law determines a bankruptcy estate's interest in a retainer, the Court looks to Idaho law.

The only Idaho state court decision to address prepaid retainers, *State ex. rel. Moore v. Scroggie*, does not explicitly identify the type of retainer involved, *i.e.*, advance payment retainer, security retainer, or classic retainer.[8]  *See* 704 P.2d 364, 370 (Idaho Ct. App. 1985).  However, *Moore* implies the funds paid to the attorney in question were a security

---

[8]  There are three generally recognized types of retainers:  (1) classic retainers, (2) security retainers, and (3) advance payment retainers.  *Rus, Miliband & Smith, APC v. Yoo* (*In re Dick Cepek, Inc.*), 339 B.R. 730, 736 (9th Cir. BAP 2006).  Classic retainers are sums of money paid to secure an attorney's availability over time.  *Id.* at n.5.  Security retainers are funds held for payment of fees for future services to be rendered by an attorney.  *Id.* at 736.  An advance payment retainer is funds that a debtor and attorney agree are paid in advance for some or all of the services that the attorney will perform on the debtor's behalf.  *In re McDonald Bros. Constr., Inc.*, 114 B.R. at 1000.

MEMORANDUM OF DECISION - 19

retainer.  *See id.* (indicating the retainer was "of the type which is to be applied against fees to be earned in the future.").  Where such a retainer is to be used, *Moore* indicates "the fees must be earned and all payments made on account of such fees and costs must be accounted for by the attorney."  *Id.*  Thus, per Idaho case law, the funds used for a security retainer do not belong to an attorney when paid; they only become the attorney's property once actually earned.  *Id.; but cf. For-Rose Plumbing, Inc.,* 99.2 at 72 (incorrectly interpreting *Moore* to state that retainers paid in advance of services are property of an attorney when transferred).[9]

This Court's decisions analyzing retainers have been consistent with the state law view that, as to security retainers, debtors retain an interest in the retainers, and they become property of the estate when a bankruptcy petition is filed.  *See, e.g., In re Danner,* 2011 WL 2133768, Bankr. No. 11-

---

[9]  *For-Rose Plumbing, Inc.,* cites *Moore* for the proposition that, "[i]n Idaho, retainers prepaying legal services to be rendered in the future belong to the attorney when transferred to the attorney."  99.2 I.B.C.R. at 72.  *Moore,* however, does not say that an attorney has earned fees when transferred.  *See* 704 P.2d at 370.  Rather, it states that, even with a security retainer, an attorney must still "earn" his fees.  *Id.*  Any inference that *Moore* indicates a transfer in possession of funds equates to a transfer in the funds ownership is too broad.

MEMORANDUM OF DECISION - 20

00651-TLM, Dkt. No. 45 at 7 (Bankr. D. Idaho May 26, 2011) (viewing a so-called advance payment retainer as "the equivalent of a traditional security retainer which became property of the bankruptcy estate on the petition date."), *on appeal*, Bankr. No. 11-00651, Dkt. No. 54.[10]  The Court's decisions addressing advance payment retainers, though, have been less consistent. *Compare In re Blackburn*, 448 B.R. 28, 37–38 (Bankr. D. Idaho Jan. 26, 2011) (citing *For-Rose Plumbing, Inc.*, and indicating that "advance payment retainers belong to the attorney when transferred," and that such "retainer funds are not estate property"), *and In re Dearborn Constr., Inc.*, 03.1 I.B.C.R. 17, 20 n.15 (Bankr. D. Idaho 2003) (recognizing, in *dicta*, the Court's observation in *For-Rose Plumbing, Inc.*, that an advance payment retainer belongs to an attorney when transferred to him), *with In re For-Rose Plumbing, Inc.*, 99.2 I.B.C.R. at 72 (looking to state law in an advance payment retainer case, and finding that any unearned portion of such a

---

[10]  Counsel in this case was also the proposed attorney for the debtor-in-possession in *Danner*.  While, in this case, he asserts that his retainer in *Danner* was not a security retainer, he does not dispute that, if it were a security retainer, it would be property of the bankruptcy estate.

MEMORANDUM OF DECISION - 21

retainer is property of the estate), *and In re Ida-Man, Inc.*, 91 I.B.C.R. at 199–200 (finding, simply, that any attempt to use an advance payment retainer, or to deem fees as earned when transferred, is not appropriate in the bankruptcy context).  While the Court's concept of advance payment retainers has apparently shifted over time, the recent trend appears to be that advance payment retainers are not property of a bankruptcy estate. *But see In re Danner*, Bankr. No. 11-00651-TLM, Dkt. No. 45 at 7 n.7 (indicating that the Court's comments in *Dearborn Construction, Inc.*, were *dicta*).

> 2.  <u>The Fee Agreement creates a security retainer, and not an advance payment retainer</u>.

Even if advance payment retainers in Idaho are not property of the bankruptcy estate, the Court concludes that the Fee Agreement in this case did not create an advance payment retainer.

An advance payment retainer is one whereby an attorney receives payment in exchange for certain agreed-upon, enumerated services to be performed on the debtor's behalf in the future.  *See In re McDonald Bros.*

MEMORANDUM OF DECISION - 22

*Constr., Inc.*, 114 B.R. at 1000 ("[An] example of . . . an advance payment is

. . . where the debtor paid his attorney a flat fee of $2000 for all of the work

to be performed in a Chapter 12 case."); *see also* 3 COLLIER ON BANKRUPTCY

¶ 328.02[3][b][ii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("An

example of an advance payment or fixed fee is a flat fee of $2,000 paid to

the debtor's attorney for all enumerated work to be performed in the

bankruptcy case.").  The services agreed to be rendered by the attorney in

exchange for the flat fee can either be the entire scope of services

anticipated in the case, or may be limited to specific tasks.  *See Redmond v.*

*Lentz & Clark, P.A.* (*In re Wagers*), 514 F.3d 1021, 1025 n.6 (10th Cir. 2007)

(explaining that flat fee retainers[11] "consist[] of an agreed [upon] amount

payable for performance of a specific task."); *In re McDonald Bros. Constr.,*

*Inc.*, 114 B.R. at 1000 (defining an advance payment retainer as "one in

which the debtor pays, in advance, for some or all of the services that the

---

[11] These payment arrangements are interchangeably referred to as
advance payment retainers, flat fee retainers, and fixed fee retainers. *See, e.g., In*
*re For-Rose Plumbing, Inc.*, 99.2 I.B.C.R. at 72; 3 COLLIER ON BANKRUPTCY
¶ 328.02[3][b][ii].

MEMORANDUM OF DECISION - 23

attorney is expected to perform on the debtor's behalf.").[12]

In contrast, a security retainer is merely a secure source of funds that an attorney can apply to fees as services are performed for a debtor-client. *See In re Dick Cepek, Inc.*, 339 B.R. at 736.

While Counsel insists his Fee Agreement with Debtors creates an "advance payment retainer," it is the substance of a retainer, and not its name, that determines its nature and legal attributes. *In re C & P Auto Transport, Inc.*, 94 B.R. 682, 687 (Bankr. E.D. Cal. 1988). Here, Counsel's Fee Agreement does not enumerate any specific "to-be-performed" tasks for which he has earned payment of the retainer. *See* Dkt. No. 14. Rather, the Fee Agreement provides that Counsel will tap the retainer as he completes

---

[12] Counsel reads cases including such language as defining advance payment retainers such that they may be used to pay for some of the fees incurred in providing various services on a debtor's behalf. *See* Response to UST's Objection at 3–4, Dkt. No. 31. The most common definition of an advance payment retainer, however, does not allow retainers to be used to pay for some of the *fees* in a given case, but rather allows them to be used to pay for some of the *services* provided in the case. *See In re McDonald Bros. Constr., Inc.*, 114 B.R. at 1000. Security retainers, on the other hand, are traditionally used to pay for some of the *fees* incurred in a case. *In re Dick Cepek, Inc.*, 339 B.R. at 736 ("A security retainer is generally held as security for payment of fees for future services to be rendered by the attorney.")

MEMORANDUM OF DECISION - 24

work in the case, regardless of what services are entailed. *See id.* Counsel

argues that, per the language of his Fee Agreement, he earned the retainer

on receipt, as would occur under an advance payment retainer. Yet,

Counsel's own Verified Statement acknowledges his obligation to "refund

any *unearned* retainer" to Debtors. Dkt. No. 15 (emphasis added). Counsel

seemingly declines to recognize that his retainer cannot be both earned and

unearned at the same time. As a result, the advance payment he received

was not earned on receipt as Counsel claims. Rather, the Fee Agreement

provides for a secure source of payment for his past and future services. In

doing so, it is the quintessential security retainer. *See In re Danner*, Bankr.

No. 11-00651-TLM, Dkt. No. 45 at 7.

> 3. <u>Counsel's proposal to deposit the $7,500 in his general account for his immediate use without Court approval is inappropriate under Idaho's Rules of Professional Conduct</u>.

When also confronted with minimal or no state case law on attorney

retainer ownership,[13] other bankruptcy courts have looked to the

---

[13] There is no Idaho state court case law addressing advance payment

(continued...)

applicable state rules of professional conduct for guidance.  *See, e.g., In re*

*Montgomery Drilling Co.,* 121 B.R. 32, 38 (Bankr. E.D. Cal. 1990).  The Idaho

Rules of Professional Conduct ("I.R.P.C.") address the payment of

attorneys' fees, and, while not assisting in the analysis of Idaho advance

payment retainers, indicate how retainers, in general, are to be handled by

Idaho attorneys.  *See* I.R.P.C. 1.5. According to the commentary to the

I.R.P.C., an attorney in Idaho may obtain advance payment of a fee, but is

required to return any portion of the fee that he does not actually earn.

I.R.P.C. 1.5, cmt. [4]; I.R.P.C. 1.16(d).  Thus, the Idaho rules provide that,

regardless of possession of funds, fees are not an attorney's property until

earned.  *See* I.R.P.C. 1.16(d).  Until that time, all funds must be maintained

in a separate client trust account.  I.R.P.C. 1.15(b).  This requirement

applies regardless of the type of retainer used, as long as a client may

receive a refund of unearned fees at the end of representation.  *See* I.R.P.C.

1.15(b), 1.16(d).  Under these rules, Counsel's proposal to deposit Debtors'

---

[13](...continued)
retainer ownership.

MEMORANDUM OF DECISION - 26

funds in his general account, and his intention to have free access to those monies, particularly in this case where the retainer is a security retainer, is inappropriate.

In summary, then, Counsel's Fee Agreement with Debtors creates a security retainer, and the funds to be used to compensate Counsel for post-bankruptcy services, paid to him under the terms of this arrangement, constitute property of the estate. Therefore, assuming the funds paid to Counsel came from Debtors, and not directly from Duppong, Counsel must comply with the requirements of § 330(a), and seek and obtain prior Court approval for any payment of compensation or expenses. Because Debtors' Application proposes to employ Counsel under an arrangement that would not require appropriate application, notice, hearing, and prior approval by the Court under § 330(a) for his compensation and expenses, Counsel's employment must be denied.

## Conclusion

Counsel's disclosures in this case do not clearly indicate that the source of his fees was likely one of Debtors' creditors, nor do they explain

MEMORANDUM OF DECISION - 27

what connections, if any, he or his clients have with that party.  If Counsel

was paid by a creditor, without more information, Counsel is likely not a

disinterested person in Debtors' case, and is disqualified from representing

them.  If he was paid directly by Debtors, the terms of Counsel's Fee

Agreement are inconsistent with the Bankruptcy Code and Rules.

The UST's Objection to Counsel's employment will be sustained,

and Debtors' Application to employ Counsel will be denied, without

prejudice, in a separate order.  Debtors and Counsel may revise their Fee

Agreement to comply with the Code and Rules, after which they may

reapply for approval of Counsel's employment.

Dated:  August 26, 2011

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 28